**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**VIRGINIA PARKER**                                                                                         **PLAINTIFF**

**V.**                          **CASE NO.: 5:14CV00391 BD**

**CAROLYN W. COLVIN, Acting Commissioner,**
**Social Security Administration**                                                                **DEFENDANT**

**MEMORANDUM OPINION AND ORDER OF REMAND**

Plaintiff Virginia Parker has appealed the final decision of the Commissioner of the Social Security Administration denying her claim for supplemental security income. Both parties have submitted appeal briefs and the case is ready for decision.[1]

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); see also 42 U.S.C. §§ 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996). In assessing the substantiality of the evidence, the Court has considered evidence that detracts from the Commissioner's decision as well as evidence that supports it.

---

[1]The parties have consented to the jurisdiction of the Magistrate Judge. (Docket #5)

Ms. Parker alleged she became limited in her ability work by heart problems, anemia, hypoglycemia, breathing problems, numbness in the extremities, vision problems, chest pain, and shoulder pain.[2] (SSA record at 55)  After conducting a hearing, the Administrative Law Judge ("ALJ") concluded that Ms. Parker had not been under a disability within the meaning of the Social Security Act at any time from December 19, 2011, through June 14, 2013, the date of his decision. (*Id*. at 16, 26)  On September 5, 2014, the Appeals Council denied the request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (*Id*. at 1-6)  Ms. Parker then filed her complaint initiating this appeal. (Docket #2)

Ms. Parker was almost 49 years old at the time of the hearing and had graduated from high school.  She did not have any past relevant work. (*Id*. at 35) The ALJ found that Ms. Parker had never engaged in substantial gainful activity. (*Id*. at 17) He found that she had severe impairments: congenital heart impairment, congestive heart failure, coronary artery disease, and cardiomyopathy. (*Id*. at 17)  He further found that she did not have an impairment or combination of impairments that met or equaled a Listing. (*Id*.)  He judged Ms. Parker's allegations regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (*Id*. at 20)

---

[2]Ms. Parker's prior applications were denied on July 29, 1999, December 7, 2001, and January 11, 2008. (SSA record at 133-34)

Based on these findings, the ALJ concluded that Ms. Parker retained the residual functional capacity ("RFC") to perform a full range of sedentary work. (*Id*. at 17-21) The ALJ concluded that Ms. Parker did not have any past relevant work and, relying on the Medical-Vocational Guidelines ("Guidelines") as a framework for decision making, concluded she was not disabled within the meaning of the Act. (Tr. 21-22)

**The Medical-Vocational Guidelines**

Ms. Parker argues that the ALJ erred by relying on the Guidelines rather than testimony from a vocational expert at step five of the sequential evaluation process. The Commissioner responds that the ALJ considered Ms. Parker's nonexertional impairments, and that he could rely on the Guidelines because he had concluded that Ms. Parker was able to perform a full range of sedentary work.

The general rule is that an ALJ must utilize a vocational expert, rather than rely on the Guidelines, where a claimant suffers from non-exertional impairments that limit her ability to perform the full range of guideline work. *Brock v. Astrue*, __ F.3d __, 2012 WL 1020242, *2 (8th Cir. 2012) (quoting *Reed v. Sullivan*, 988 F.2d 812, 816 (8th Cir. 1993)). There is, however, a longstanding exception to the rule. An ALJ may use the Guidelines even though there is a non-exertional impairment if the ALJ finds, and the record supports the finding, that the non-exertional impairment does not diminish the

claimant's residual functional capacity to perform the full range of activities listed in the Guidelines. *Id*. (quoting *Thompson v. Bowen*, 850 F.2d 346 (8th Cir. 1988)). The ALJ must determine, therefore, whether a claimant's non-exertional impairments affect her residual functional capacity in a significant way so as to preclude her from engaging in the exertional tasks contemplated in the Guidelines. *Thompson*, 850 F.2d at 350.

Ms. Parker points out that, in spite of the fact that she alleged disability in part due to breathing problems, the ALJ did not address her non-exertional impairments related to her moderate obstuctive lung defect and extensive emphysematous changes in her lungs. (*Id*. at 55) Ms. Parker argues that, as a result of shortness of breath, she frequently needs to sit in a reclining position. (*Id*. at 37)

There is substantial evidence in the record to support Ms. Parker's complaints of obstructive lung defect and emphysmatous changes in her lungs. During Ms. Parker's hospitalization for chest pain in November, 2011, Joseph Fakouri, M.D., noted that her CT scan, with PE protocol, revealed "extensive bullous emphysematous changes through the lung fields." (*Id*. at 200-01) Emphysematous changes were again noted by Radiologist Paolo Lim, M.D., who reviewed Ms. Parker's CT angiography on March 25, 2012, and concluded Ms. Parker had "extensive emphysematous changes in the lungs." (*Id*. at 301-02) Moreover, in a report from March, 2012, the Commissioner's consulting examiner diagnosed shortness of breath with low ejection fraction. (*Id*. at 249)

Further, there is substantial evidence in the record to support Ms. Parker's claims of limitations due to obstructive lung defect and emphysmatous changes. During visits to her cardiologist, Sadeem Mahmood, M.D., in July and August, 2012, Ms. Parker complained of shortness of breath and dyspnea. Dr. Mahmood diagnosed shortness of breath. (*Id*. at 377-83) In a residual functional capacity questionaire, Dr. Mahmood diagnosed left ventrical ejection fraction of 30% and heart failure. (*Id*. at 317) He found that Ms. Parker had pressure in her chest that is worse with activity and that requires her to lie down. (*Id*. at 317, 319) Further, he found that she should avoid concentrated exposure to noise, have only moderate exposure to cold and wetness and should avoid all exposure to extreme heat, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards such as machinery and heights. (*Id*. at 322)

In his opinion, the ALJ stated he gave the opinion "some consideration." He did not state, however, the weight he was giving the opinion. (*Id*. at 20) It was error for the ALJ to discount Dr. Mahmood's opinion without giving good reasons for doing so. See 20 C.F.R. § 416.927.

Here, the record bears out Ms. Parker's allegations of shortness of breath. Her allegations of shortness of breath were confirmed by her treating sources. (*Id*. at 198-99, 201, 218, 230, 245, 249, 290, 292, 299, 302, 316-17, 342, 377, 379, 381-82) In spite of this evidence, the ALJ rejected Ms. Parker's complaints of breathing problems, in part because she continued to smoke after being told by treating sources to quit. While the

ALJ may consider her noncompliance with treatment as one factor in making a credibility determination, on this record there was also evidence that Ms. Parker had attempted to quit smoking.  (*Id*. at 254, 312, 377)  Further, there is no indication in the record that quitting smoking would have eliminated the breathing problems given her ongoing heart condition and the emphysmatous changes in her lungs.[3]

The ALJ also rejected Ms. Parker's complaints of breathing problems because a technician who performed a pulmonary function test on July 2, 2012, noted that Ms. Parker gave "poor effort."  (*Id*. at 333-37)  In interpreting the results, however, the technician found she had "moderate obstructive lung defect" and recommended a more detailed pulmonary function test.  (*Id*. at 334)

In these circumstances, the ALJ made an error of law by not considering Ms. Parker's emphysematous changes in the lungs and resulting breathing problems as a condition that resulted in non-exertional impairments and thus requiring testimony from a vocational expert.  The ALJ needed vocational expert testimony to determine whether Ms. Parker's breathing problems diminished her capacity to perform sedentary work.

**Conclusion**

After consideration of the record as a whole, the Court concludes the decision of the Commissioner is not supported by substantial evidence.  The Commissioner's

---

[3]There is no cure for emphysema. Deanna M. Swartout-Corbeil, Patricia Skinner, & Rebecca J. Frey, *Emphysema*, in THE GALE ENCYCLOPEDIA OF MEDICINE 4th ed. Vol. 2 at 1523-1530 (Laurie J. Fundukian ed. 2011).

decision is reversed and remanded for action consistent with this opinion. This is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

The oral argument hearing scheduled for September 24, 2015, is canceled.

DATED this 15th day of June, 2015.

_____
UNITED STATES MAGISTRATE JUDGE